NOT DESIGNATED FOR PUBLICATION

No. 126,266

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHARLES D. THOMAS II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; STACEY DONOVAN, judge. Submitted without oral argument. Opinion filed September 6, 2024. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., GREEN and HILL, JJ.

PER CURIAM:  Charles D. Thomas II appeals his two convictions for attempted second-degree intentional murder. He argues that the State failed to prove that he performed an overt act with the intent to kill—as required by law. Our review of the record reveals that a rational jury considering the words and deeds of Thomas could find him guilty of both crimes. Because the evidence, viewed in a light most favorable to the State, was sufficient to support Thomas' convictions, we affirm.

1

*One evening, at home, Thomas shot at two people.*

Charles Thomas and his longtime girlfriend and mother of their three children, L.E., were in their trailer home in Lawrence, Kansas, with their children and a family friend, Andrew Sommer. Thomas had a disability, leaving him unable to get around without the use of his cane, and he had difficulty using his left arm. That night, an argument began between Thomas and L.E. The argument escalated when Thomas hit six-year-old M.E. in the face with his cane. This argument further escalated when Thomas pulled a gun from his waistband.

Sommer—who stepped outside to give the couple some space—came back inside when he heard yelling or screaming. Thomas directed the aim of the gun at Sommer, told Sommer to get out of the trailer, and then fired the gun in Sommer's direction. Sommer backed out of the trailer as Thomas fired a second shot at Sommer. Once Sommer was outside, Thomas redirected his focus to L.E.

The evidence at trial concerning what happened next is conflicting; however, it appears that Thomas ordered L.E. to get on the floor and, as she complied, he struck her face with the butt of his gun. Sommer heard her screaming for help, so he ran back to the front door and stuck his head inside the trailer. He saw L.E. kneeling on the floor, covered in blood, with Thomas standing over her holding a gun to her head. Sommer then rushed inside and tackled Thomas, knocking the gun out of Thomas' hand. He then held Thomas on the floor until law enforcement officers arrived.

*At trial, Thomas claimed voluntary intoxication and self-defense.*

Thomas gave a different version of events. He said that the argument began because M.E. spat in F.T.'s face. He testified that shortly thereafter, L.E. asked Sommer to get Thomas out of the house, and Sommer began advancing towards Thomas

2

in an aggressive manner. Thomas noticed Sommer reach for something in his pocket and that "as [he] looks back on it, [Sommer] had a knife." He said that the knife was a kitchen knife—possibly a steak knife—but he could not remember exactly. At this point, Thomas testified that

> "[e]verybody was just screaming at one another, so, um, I just—I don't know how to put it. I just—I just picked up the gun and then [shot] one time to tell him to get out the house. He got—like, he didn't understand, like, I was telling him so, um, I fired another shot at him."

Thomas testified that he closed the door once Sommer was outside and went back to L.E., who was on the floor bleeding. Thomas said that as he bent down to check on her and was talking with her, Sommer came back inside and tackled Thomas.

When asked on cross-examination how Sommer held the knife, Thomas recalled Sommer holding it "[l]ike Chucky." Thomas clarified that Sommer held the knife like the popular horror movie antagonist who is a serial-killing doll—depicted with a knife wielded at the doll's waist. Though, Thomas also admitted that Sommer did not seem to have the knife when Sommer tackled Thomas—Thomas was not stabbed with a knife, nor did he hear a knife fall on the ground. Thomas also testified that Sommer pulled out a knife first, so Thomas pulled out a gun.

*Thomas testified he ingested drugs earlier that evening.*

Thomas also testified that he smoked K2—a synthetic cannabinoid—at some point that evening. He believed that the blunt he smoked was laced with PCP. He thought that the K2 he smoked was laced with something because his behavior that night was not normal. Thomas recalled that in the video of his interview, he was incoherent and "everywhere." Thomas did admit on cross-examination that he told officers during his interview that he had smoked K2 much earlier in the evening. Thomas also admitted that

3

he told the officers that he felt coherent and knew what was going on during the interview.

The jury found Thomas guilty of attempted second-degree murder of Sommer and L.E. and aggravated battery of L.E. The jury convicted Thomas of the lesser offense of battery of M.E. and found Thomas guilty of aggravated endangering a child (K.D.S., M.E., and F.T.). The jury did not find Thomas guilty of the other two attempted second-degree murder charges of K.D.S. and M.E. The sentencing court imposed a 113-month prison term and a concurrent 6-month jail sentence with a postrelease supervision term of 36 months.

Thomas limits his appeal to the two attempted second-degree murder convictions. He contends that the State failed to present sufficient evidence that he intended to kill either Sommer or L.E. Basically, he is saying I could have killed them, but I didn't—so I am not guilty.

To determine whether there was sufficient evidence to support Thomas' convictions, a review of the relevant caselaw is necessary. Appellate courts review sufficiency of evidence challenges in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. The reviewing court must not reweigh evidence or resolve conflicts in the evidence, nor pass on the credibility of witnesses. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). The burden on the challenging party is a high one, and "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt" will a court reverse such a verdict. *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

We note that a verdict may be supported by circumstantial evidence if the evidence provides a basis for a reasonable inference by the jury regarding the fact in

4

issue. To be sufficient, circumstantial evidence need not exclude every other reasonable conclusion. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021). A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Pattillo*, 311 Kan. 995, 1003, 469 P.3d 1250 (2020). But see *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017) (circumstances used to infer guilt must be proved and cannot be inferred or presumed from other circumstances). There is no legal distinction between direct and circumstantial evidence in terms of their respective probative value. *Aguirre*, 313 Kan. at 209.

*The evidence was sufficient to convict Thomas of attempted second-degree murder of Sommer.*

Thomas' argument centers on his contention that the evidence established that Thomas fired the shots at Sommer as a "warning shot" and never intended to hit Sommer.

Thomas cites the fact that he never said anything to Sommer regarding his intentions when firing his gun in Sommer's direction or the fact that Thomas never made any verbal threats to Sommer as evidence negating his intent to kill Sommer. He also emphasizes the lack of any gunshot residue test performed on Sommer—despite Sommer's statements that he felt gunpowder on his head—as further evidence negating an inference that he intended to kill Sommer. He construes these failures "to conduct any type of test to corroborate [Sommer's] claims" as evidence raising "a reasonable doubt concerning the veracity and credibility of [Sommer's] claims." Thomas concludes that under these circumstances, "no rational juror would have found the evidence sufficient to convict" Thomas of attempted second-degree intentional murder of Sommer.

To convict Thomas, the State needed to prove that Thomas attempted to intentionally kill Sommer. See K.S.A. 21-5403(a)(1). Attempt is an incomplete or inchoate crime, defined by statute as "any overt act toward the perpetration of a crime

done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 21-5301(a).

The trial court instructed the jury on the elements of attempted second-degree intentional murder:

"The defendant is charged in Count 1 with an attempt to commit murder in the second degree. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant performed an overt act toward the commission of murder in the second degree of Andrew Joseph Sommer.

"2. The defendant did so with the intent to commit murder in the second degree.

"3. The defendant failed to complete commission of murder in the second degree.

"4. This act occurred on or about the 8th day of July, 2020, in Douglas County, Kansas."

The trial court also instructed the jury on the legal definition of an overt act:

"An overt act necessarily must extend beyond mere preparations made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense. Mere preparation is insufficient to constitute an overt act."

The trial court defined for the jury the mental state required to convict Thomas of attempted second-degree murder as: "A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State." Also in the same instruction, the trial court instructed the jury on the affirmative defense of voluntary intoxication operating to negate the requisite state of mind. That instruction stated: "Evidence of voluntary intoxication may be considered in determining whether such intoxication impaired the defendant's mental faculties to the extent that he was

6

incapable of forming the necessary intent to commit Attempted Murder in the Second Degree."

*The jury rendered its verdict.*

The jury heard evidence including the audio recording of K.D.S.'s 911 call, the video recording of Thomas' interview with law enforcement shortly after the shooting, and the video of Officer Crellin's body camera showing Sommer's statements to officers at the scene of the shooting.

This record shows that the jury followed the trial court's instructions. Based on this evidence and testimony at trial, the jury found Thomas guilty of attempted second-degree murder of Sommer and L.E. The jury did not, however, find Thomas guilty for the attempted second-degree murder of K.D.S. and M.E.  It follows then that the jury determined that the State did prove beyond a reasonable doubt that Thomas intended to kill Sommer, performed an overt act in furtherance of the commission of murder in the second degree, but failed in the completion of the offense.

In support of the jury's determination of guilt, there was sufficient evidence that a rational fact-finder could find Thomas guilty of both attempted second-degree murder convictions beyond a reasonable doubt. That evidence includes statements made by L.E., Sommer, and Thomas to law enforcement shortly after the shooting occurred. All three witnesses told law enforcement that Thomas had a gun, pointed at Sommer, fired the gun anywhere from 2 to 10 times in Sommer's direction as Sommer ran out of the trailer, and that after some time passed, Sommer ran back inside the trailer, tackled Thomas, and held Thomas on the ground until law enforcement arrived.

In Thomas' own testimony, he admitted that he fired the gun at Sommer twice. Thomas denied that he intended to kill Sommer—claiming his motive was only to fire

warning shots or, as Thomas later testified, his motive was self-defense.

The jury weighed the evidence; we will not. It is the role of the jury rather than a reviewing court to weigh the evidence, resolve conflicts between the evidence, and judge the credibility of witnesses. *Aguirre*, 313 Kan. at 209. Therefore, viewed in the light most favorable to the State, the jury had sufficient evidence to convict Thomas of attempted second-degree intentional murder of Sommer. Thomas fails to show us that no rational fact-finder would find him guilty of attempted second-degree murder of Sommer.

*The evidence supports the jury's finding of guilt of attempted second-degree murder of L.E.*

Viewed in a light most favorable to the State, the evidence established that Thomas and L.E. had an argument that escalated. Sommer came inside to check on her after she yelled for Sommer, and Thomas pulled out a gun. Thomas pointed that gun at Sommer and fired the gun while telling Sommer to get out. As Sommer exited the trailer, Thomas fired at Sommer a second time. Once Sommer was outside, Thomas redirected the gun at L.E. and asked her if she was "ready to die?" Thomas fired the gun twice: once in her direction—sending a bullet travelling past the left side of her face—and then fired a second shot at the floor. While shooting at the floor, Thomas ordered her to "get on the floor, bitch."

Once on the floor, Thomas struck her on the left side of her face with the butt of the gun four times, causing her to scream for help. Hearing her scream, Sommer rushed back inside and saw L.E. kneeling on the ground while Thomas stood over her, holding a

gun to her head—which was covered in blood. Sommer tackled Thomas, knocked the gun away, and held Thomas on the ground until law enforcement arrived.

From this evidence, a rational inference could be drawn that Thomas intended to kill L.E. but failed to carry out the offense only because of his disability and Sommer's intervention. Therefore, a rational fact-finder could find Thomas guilty beyond a reasonable doubt of attempted second-degree murder of L.E.

Our review of this record compels us to hold that Thomas has failed to convince us that no reasonable fact-finder could find him guilty of these two crimes. There is ample evidence for a reasonable juror to find him guilty on both counts, and we affirm his convictions.

Affirmed.